UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

PAMELA M. CRAWFORD  Case No. 09-58228
aka PAMELA RACINE,  Chapter 7
 Hon. Walter Shapero

      Debtor.

_____/

## OPINION REGARDING RELIEF FROM THE AUTOMATIC STAY

The matter before the Court is Michigan Schools and Government Credit Union's Motion for Relief from the Automatic Stay.

### Facts

Pamela M. Crawford ("Debtor") filed a Chapter 7 petition on June 10, 2009. At the time of filing, Debtor was indebted to Michigan Schools and Government Credit Union ("MSGCU") in the amount of $9,785.58 as the result of advances taken on a VISA account. At the time of filing, Debtor's name was on the following accounts at MSGCU: XXX8708, XXX8908-S01, XXX8908-S07, and XXX8600-S07. Debtor's son, Jeremy Racine, is listed as a joint owner on account number XXX8908, which had a savings balance of $315.25 and a checking balance of $2,122.93 at the time of filing. Jeremy Racine is 20 years old and that account was opened in 1991. Debtor's other son, Steven Racine, is listed as a joint owner on account number XXX8600, which had a balance of $7,623.05 at the time of filing. Steven Racine is 26 years old and that account was opened in 1984. A total of the amounts in the accounts listing Debtor as an owner had an amount in excess of $9,785.58 on deposit at the time of filing. Upon learning of Debtor's bankruptcy filing, MSGCU imposed an administrative freeze on said accounts. MSGCU then

-1-

filed its Motion for Relief from the Automatic Stay to Allow Setoff Pursuant to 11 U.S.C. § 553(a).

MSGCU claims that it has a statutory lien against the funds in all of the aforementioned accounts pursuant to M.C.L. 490.361(4). Debtor claims that the accounts in question were opened approximately twenty years prior to the petition date for the sole purpose of starting accounts for her two sons. Debtor claims that she was unaware that her name remained on the accounts and that her sons are the only individuals that have made deposits into or withdrawn money from the accounts. Debtor argues that MSGCU cannot setoff against the funds in those accounts and that the automatic stay should not be lifted. Debtor also claims that the MSGCU violated the automatic stay by imposing an administrative freeze on the accounts.

## Discussion

### Violation of the Automatic Stay

MSGCU has not violated the automatic stay by imposing an administrative freeze on the accounts in question. Under the Supreme Court's decision in *Strumpf*, a temporary freeze on funds in which a creditor has a good faith basis for asserting a right of setoff, and which is promptly followed by a request for relief from the automatic stay, simply maintains the status quo and therefore does not violate the automatic stay. *See Citizens Bank of Maryland. v. Strumpf*, 516 U.S. 16, 116 S. Ct. 286, 133 L. Ed. 2d 258 (1995). In *Strumpf*, the Supreme Court concluded that a bank's administrative freeze on the debtor's bank account in order to preserve the bank's right of setoff did not violate the automatic stay since if the bank were required to release the funds "it would divest the creditor of the very thing that supports the setoff." *In re Giles*, 271 B.R. 903, 906 (Bankr. M.D. Fla. 2002) (quoting *Strumpf*, 516 U.S. at 20, 116 S. Ct.

-2-

286). In this case, MSGCU does have a good faith basis for asserting a right to setoff and it promptly requested relief from the automatic stay. Therefore, the Court finds that MSGCU has not violated the automatic stay.

## 11 U.S.C. § 553(a)

MSGCU argues that it is entitled to set off against funds in all accounts that list the Debtor as a joint owner. 11 U.S.C. § 553 preserves the right to set off as a widely recognized common law right that "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *In re Strumpf*, 516 U.S. at 18. Section 553(a) preserves the right to set off pre-petition debts and pre-petition claims with certain limitations. Section 553 provides, in part:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of this case[.]

11 U.S.C. § 553(a). Section 553 does not <u>create</u> a right of set off, rather, it only preserves a right of set off to the extent that it may otherwise exist under non-bankruptcy law. "State law governs the substance of a set off claim under § 553." *In re New Haven Foundry, Inc.*, 285 B.R. 646, 648 (Bankr. E.D. Mich. 2002) (citation omitted). Section 553 preserves the right to setoff where (1) there are mutual, pre-petition obligations owing between the debtor and the creditor and (2) a right to setoff the obligations exists under nonbankruptcy law. *In re Holder*, 182 B.R. 770, 775 (Bankr. M.D. Tenn. 1995). The first element is clearly met in this case. The claim and the debt between the parties are clearly mutual because the underlying transactions were between the same parties standing in their same capacity. Also, both obligations arose pre-petition.

MSGCU cites the Credit Union Act, specifically M.C.L. § 490.361(4) and M.C.L. § 490.64, as the underlying authority for its right of set off against the amounts in the aforementioned joint accounts. M.C.L. § 490.361(4) states, in pertinent part:

> Except as provided in this subsection or where prohibited by applicable state or federal law or otherwise agreed by contract, a domestic credit union has a lien on any share of a member, or any deposit account from which a member may withdraw for his or her own benefit without the consent of another person, for any obligation owed to the domestic credit union by that member or for any loan cosigned or guaranteed by that member.

M.C.L. § 490.64, which sets forth a credit union's right to set-off or lien in situations involving multiple-party accounts, states:

> Sec. 14. Without qualifying any other statutory right to set-off or lien and subject to any contractual provision, when a party to a multiple-party account is indebted to a credit union, the credit union has a right to set-off against the entire amount in the account.

In this case, it is clear that MSGCU has a lien on the accounts in question pursuant to M.C.L. § 490.361(4). Also, pursuant to the terms of the Credit Card Agreement between the Debtor and the MSGCU, the Debtor granted the MSGCU "a consensual security interest in all individual and joint accounts [she has] with [it] now and in the future to secure all advances made under your credit card agreement." Under the clear and unambiguous language of M.C.L. § 490.64, MSGCU has the right to setoff against the entire balance of each account that lists Debtor as a joint owner. The Debtor does not offer any authority that would allow the Court to read any exception into the clear and unambiguous language of M.C.L. § 490.64.

The Debtor claims that MSGCU may not set off against the amounts in the accounts in question because she has not deposited any monies into or withdrawn any monies from either of the accounts. The Debtor relies on M.C.L. § 490.53, which creates a presumption regarding

-4-

ownership of funds deposited into multiple-party accounts.. M.C.L. § 490.53 states, in pertinent part:

> Sec. 3. During the lifetime of all parties, a multiple-party account which provides that sums on deposit or in shares may be paid on the demand of either of 2 or more parties is presumed to belong to the parties in proportion to the net contributions by each to the sums on deposit.

M.C.L. § 490.51(e) defines the term "net contribution" as used in the Credit Union Act. It states, in pertinent part:

> "Net contribution" of a party to a multiple-party account as of any given time is the sum of all deposits made by or for him, less all withdrawals made by him or for him which have not been paid or applied to the use of any other party, plus a pro rata share of any interest or dividends included in the current balance.

The presumption created by M.C.L. § 490.53 "concerning beneficial ownership as between parties, or as between parties and beneficiaries, of multiple-party accounts [is] relevant only to controversies between these persons or their creditors and other successors . . . ." M.C.L. § 490.52. The Court acknowledges that some ambiguity may be raised by M.C.L. § 490.52, given that in this case, facially at least, there is a "controversy" between the owners of the accounts and a creditor, MSGCU, to which that statute might seemingly apply. However, what dictates the result in this case is that (1) there is not a controversy as to ownership of the accounts between MSGCU and the owners of the accounts, including Debtor, which is what that statute seeks to deal with - i.e.: MSGCU does not claim any ownership in the accounts; rather, its claim of set-off is at issue - and (2) in any event, there is a specific statute, M.C.L. § 490.64, which, by reason of being specific, governs the issue of set-off. The Court therefore finds that the clear language of M.C.L. § 490.64 precludes it from engaging in a factual inquiry as to whose monies went

-5-

into the accounts in question and consequently MSGCU's Motion for Relief from the Automatic Stay is granted.

## Conclusion

For the foregoing reasons, the Court finds that MSGCU has not violated the automatic stay and that MSGCU has the right to setoff against the funds in the accounts in question. Therefore, MSGCU's Motion for Relief from the Automatic Stay is granted, and it should prepare and present an appropriate order.

**Signed on December 31, 2009**

                                               **/s/ Walter Shapero**
                                       **Walter Shapero**
                                       **United States Bankruptcy Judge**